IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:16-CV-160-BO

| | |
|---|---|
| PAUL M. RETFALVI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| COMMISSIONER OF INTERNAL | ) |
| REVENUE SERVICE, | ) |
| | ) |
| Defendants. | ) |

This matter comes before the Court on defendant's motion to dismiss, made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [DE 14]. Plaintiff opposed, and the motion is ripe for adjudication. For the reasons stated below, defendant's motion to dismiss is granted.

## BACKGROUND

*Complaint and Motion to Dismiss*

Plaintiff, originally from Hungary, moved to Canada in 1988 and in 1993 became a Canadian citizen. Later he found a job in the United States, and remained in the United States to practice medicine on an H1-B visa. [DE 4 at ¶13-15]. In 2006 he sold two properties in Canada and declared the proceeds in both Canadian and U.S. tax returns. [DE 4 at ¶19, 21, 22]. The Canadian Revenue Agency ("CRA") performed an audit on these two transactions which continued for several years. [DE 4 at ¶26]. CRA completed it audit and on October 3, 2011, because plaintiff chose not file an appeal with the Canadian Tax Court, the liability was finally determined, resulting in a Canadian tax assessment. *Id.*

Plaintiff did not pay the amount owed to Canada, and thereafter CRA sent the Internal Revenue Service ("Service") a Mutual Collection Assistance Request pursuant to Article 26A of the Third Protocol to the US-Canada Income Tax Convention. [DE 4 at ¶30]. The Service sent plaintiff a "Final Notice-Notice of Intent to Levy," demanding that he pay the current amount owed to Canada, which totaled $124,286.83.

On April 12, 2016, plaintiff filed a complaint in this Court seeking declaratory and injunctive relief. Plaintiff alleges that the Service does not have authority to utilize its collection enforcement measures on behalf of CRA, because "Article 26A is unconstitutional, invalid and of no effect," and it conflicts with the Treaty's prohibition against double taxation as well as the provisions of the Internal Revenue Code and the Internal Revenue Manual. [DE 4 at ¶3]. Plaintiff seeks an injunction to prohibit the Service from collecting the Canadian revenue claim on behalf of CRA. [DE 4 at ¶29]. Plaintiff also seeks a declaratory judgment finding the Article unconstitutional and in violation of the Treaty, the Internal Revenue Code, and the Internal Revenue Manual. [DE 4 at ¶¶27, 28].

Defendant filed a motion to dismiss, asserting that the Anti-Injunction and Declaratory Judgment Acts preclude the federal courts from issuing the relief sought by plaintiff. Defendant also disputed each of plaintiff's substantive challenges to the U.S.'s collection assistance.

*The United States – Canada Income Tax Convention*

The United States and Canada entered into the Income Tax Convention ("Treaty") in 1980, seeking to reduce tax and trade barriers between the two states.[1] Subsequent Protocols amended and expanded the terms of the Treaty, including the Third Protocol to the Treaty which

---

[1] A copy of the Treaty can be found at https://www.irs.gov/pub/irs-trty/canada.pdf. The Treaty become effective on January 1, 1985, and the Third Protocol to the Treaty entered into force on March 17, 1995.

2

included Article 26A. This Article, entitled "Assistance in Collection," allows each state to request the assistance of the other in collecting revenue claims from their own citizens who are living within other country. Specifically, Article 26A obligates each sovereign to "undertake to lend assistance to each other in the collection of taxes referred to in paragraph 9, together with interest, costs, additions to such taxes and civil penalties, referred to in this Article as a 'revenue claim'." Treaty Art. 26A ¶1.

Under Paragraph 3, "[a] revenue claim of the applicant State that has been finally determined may be accepted for collection by the competent authority of the requested State and . . . if accepted shall be collected by the requested State as though such revenue claim were the requested State's own revenue claim finally determined in accordance with the laws applicable to the collection of the requested State's own taxes." *Id.* at ¶3. Similarly, the next paragraph states that when the United States accepts an application for a revenue claim, "the revenue claim shall be treated by the United States as an assessment under United States laws against the taxpayer as of the time the application is received . . . ." *Id.* at ¶4. Article 26A also precludes "any rights of administrative or judicial review of[a] finally determined revenue claim by the requested State, based on any such rights that may be available under the laws of either Contracting State." *Id.*, at ¶5.

## DISCUSSION

Defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to

3

survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). When a facial challenge to subject matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

The Court must first address whether it possesses the jurisdiction to hear plaintiff's claims. It is well-settled that the United States, as sovereign, is immune from suit unless it has consented to be sued. *United States v. Sherwood*, 312 U.S. 584 (1941). The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* at 586; *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). A waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261; *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citing cases). Additionally, "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276 (1957) (citing *Sherwood*, 312 U.S. at 590–91).

Congress has waived sovereign immunity with respect to disputes over federal taxes in a narrow range of cases. Specifically, Congress granted district courts original jurisdiction over

> any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws ....

28 U.S.C. § 1346(a).

4

But while the Court may entertain suits challenging a collection of a tax after such collection has occurred, the Internal Revenue Code forecloses federal courts from hearing cases which seek to restrain tax collection, even ones that challenge the constitutionality of the collection. *See Alexander v. Ams. United Inc.*, 416 U.S. 752, 759–60 (1974). Section 7421(a) of the Code, commonly referred to as the Anti-Injunction Act ("AIA"), states in pertinent part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The statute's language "could scarcely be more explicit," and it reflects the Act's principal purpose of protecting "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference . . . ." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974). The effect of the Act is apparent: "courts lack jurisdiction to issue injunctive relief in suits seeking to restrain the assessment or collection of taxes." *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 405 (4th Cir. 2003); *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 506 (4th Cir. 1999) ("The Anti-Injunction Act withdraws all courts' jurisdiction over suits filed 'for the purpose of restraining the assessment or collection of any tax'."). The AIA is far-reaching, and has been applied "broadly to include activities that are intended to or may culminate in the assessment or collection of taxes." *Judicial Watch*, 317 F.3d at 405.

Similarly, the Declaratory Judgment Act ("DJA") authorizes all United States courts to issue declaratory relief in cases within their jurisdiction, "except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 [or] a proceeding under section 505 or 1146 of title 11." 28 U.S.C. § 2201(a). This tax-exclusion provision of the DJA "cannot be regarded as a jurisdictional bar, *per se*, because the Act does not

5

itself confer subject matter jurisdiction, but, rather, makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis." *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 582 (4th Cir. 1996) (internal citations removed). The AIA and DJA are "in underlying intent and practical effect, coextensive." *Id.* at 583.

The principle jurisdictional question in this case is whether a suit to enjoin the collection of a Canadian tax assessment, requested by the CRA and accepted by the Service under the terms of Article 26A of the United States-Canada Income Tax Convention, is a suit to enjoin the collection of a "federal tax" as prohibited by the Anti-Injunction and the Declaratory Judgment Acts. If the assessment is indeed a "federal tax" for purposes of domestic U.S. law, then the AIA plainly precludes jurisdiction from this Court to entertain a suit seeking injunctive relief and the DJA would prohibit this Court from issuing the declaratory relief sought by plaintiff.

Defendant argues that under the express terms of the treaty a tax assessment made under the Mutual Collection process is to be treated as a tax under the laws of the collecting state. Plaintiff does not dispute that the Treaty is fully effective and self-executing, or that the AIA precludes the enjoinment of a tax collection. What plaintiff contends is that, because this is a Canadian tax assessment, a suit to enjoin its collection by the Service is not precluded by the plain language terms of the AIA and DJA, essentially arguing that the claim in dispute is not a "federal tax" because it is a foreign revenue claim. Plaintiff also argues that the Treaty characterizes the Canadian revenue claim as an assessment as opposed to a tax, and that under recent Supreme Court precedent it should not be treated as a tax for purposes of the AIA. Both of these arguments require this Court to determine whether this collection is a "tax" for purposes of applying the Anti-Injunction Act.

6

Generally, the Court must interpret the word "tax" in the context of applying the AIA bar the same as it would be defined under a tax refund action. *See Pittston Co. v. U.S.*, 199 F.3d 694 (4th Cir. 1999) ("tax" has same meaning for purposes of 28 U.S.C. § 1346(a) and Anti-Injunction and Declaratory Judgment acts). However, in 2012 the Supreme Court in *National Federation of Independent Business v. Sebelius* ("NFIB") limited this definition, holding the word "tax" under the AIA does not extend to all exactions made by Congress under its taxing power but is limited to those exactions that Congress intended to be taxes. 132 S. Ct. 2566, 2583 (2012). Plaintiff argues that this is significant here, because Paragraph 4(a) of Article 26A states that when a revenue claim collection request is accepted, "the revenue claim shall be treated by the United States as an <u>assessment</u> under United States laws against the taxpayer as of the time the application is received . . . ." Treaty Art. 26A ¶4(a) (emphasis added). Plaintiff seizes upon this word choice in the Treaty and argues that *NFIB* stands for the proposition that "assessments" are not "taxes" for purposes of the AIA. However, the Supreme Court in *NFIB* distinguished the Affordable Care Act penalty from a tax for purposes of applying the AIA not because it was an "assessment" but because Congress chose not to label it as a tax in the Affordable Care Act and because the Internal Revenue Code did not treat it as a tax. *See NFIB*, 132 S. Ct. at 2583 ("The Anti-Injunction Act and the Affordable Care Act, however, are creatures of Congress's own creation. How they relate to each other is up to Congress, and the best evidence of Congress's intent is the statutory text."). As illustrated by the *NFIB* case, in the Internal Revenue Code—and in contrast to the Affordable Care Act—Congress elected to treat penalties as taxes, which requires that the AIA be applied to those penalties:

> Congress can, of course, describe something as a penalty but direct that it nonetheless be treated as a tax for purposes of the Anti–Injunction Act. For example, 26 U.S.C. § 6671(a) provides that "any reference in this title to 'tax' imposed by this title shall be deemed also to refer to the penalties and liabilities

7

> provided by" subchapter 68B of the Internal Revenue Code. Penalties in subchapter 68B are thus treated as taxes under Title 26, which includes the Anti-Injunction Act.

*NFIB*, 132 S. Ct. at 2583.

Unlike the Affordable Care Act penalty at issue in *NFIB*, but like subchapter 68B penalties and liabilities, the "revenue claim" here is expressly defined to be a tax in the first paragraph of Article 26A. Treaty Art. 26A ¶1 (The "Contracting States undertake to lend assistance to each other in the collection of taxes . . . referred to in this Article as a 'revenue claim.'"). Additionally, as defendant rightly points out, plaintiff's Canadian liability is for unpaid income tax, and an assessment of unpaid income tax is a claim for tax itself. *See United States v. Galletti*, 541 U.S. 114, 122 (2004) ("[I]t is clear that the term 'assessment' refers to little more than the calculation or recording of a tax liability," which allows the IRS to "employ administrative enforcement methods to collect the tax."). Article 26A requires that the United States treat this revenue claim as an assessment under the Internal Revenue Code, and that requires this Court to treat it as a federal tax.

Plaintiff also argues that the AIA should not act to bar this suit because Congress has not provided any other adequate remedy to ensure protections of his constitutional rights. The existence of constitutional claims against the collection of the tax does not, by itself, provide an exception to the Anti-Injunction Act. *Alexander v. Americans United Inc.*, 416 U.S. 752, 759 (1974) ("[The] decisions of this Court make it unmistakably clear that the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act."). Instead, an alternative remedy is provided under the laws of the United States which allow for taxpayers to raise constitutional challenges through refund suits after first paying the disputed amount. 26 U.S.C. § 7422(a); *Enoch v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962) ("The manifest purpose of [the AIA] is to permit the United States to assess and

8

collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed terms be determined in a suit for refund."). That is sufficient for purposes of the AIA and the U.S. Constitution. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974) (stating that a suit for a refund offers a "full, albeit delayed, opportunity to litigate the legality" of the Service's actions). Plaintiff does not argue that any other exception to the AIA applies to this case.

Finally, plaintiff argues that the "US-Canada Treaty's policy preference compels judicial review on the merits." [DE 17 at 4]. Paragraph 11 of the Treaty states that the authorities for each state "shall agree upon . . . application of this Article, including agreement to ensure comparable levels of assistance." Art. 26A at ¶11. Plaintiff interprets this to mean that United States courts are compelled to review matters challenging the constitutionality of the Article 26A collection procedures "because Canada's courts will consider a similar case raising similar issues." [DE 17 at 12]. However, as defendant rightly states, "[c]omparable assistance . . . is not equivalent to equal access to court." [DE 19 at 5] (citing *United States v. Stuart*, 489 U.S. 353, 369 (1989)). This Treaty provision does not provide this Court with a substantive basis for subject matter jurisdiction, and plaintiff has cited no other provision under United States law that would allow this Court to review the merits of his claims.

For these reasons, the Court finds that the Canadian revenue claim the Service has accepted for collection is to be treated as a tax under the laws of the United States and that, therefore, the AIA works in tandem with the DJA to preclude this Court from issuing to plaintiff the relief he has sought. *See Dileng v. Comm'r of Internal Revenue Serv.*, 157 F. Supp. 3d 1336, 1343 (N.D. Ga. 2016) (Under an analogous mutual collection provision in a treaty with Denmark, "a revenue claim, if accepted, is treated by the United States as if it were an

assessment of taxes owed to the United States itself, subject to the laws of the United States in collecting its own taxes, including the DJA and the AIA."). With no jurisdiction over plaintiff's claims, this Court cannot consider the remainder of plaintiff's contentions and does not need to consider defendant's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons stated above, this Court does not have subject matter jurisdiction over plaintiff's claim seeking declaratory judgment and injunctive relief. Accordingly, defendant's motion to dismiss [DE 14] is GRANTED. The Clerk is DIRECTED to enter judgment accordingly and to close the file.

SO ORDERED, this _19_ day of October, 2016.

                                            TERRENCE W. BOYLE
                                            UNITED STATES DISTRICT JUDGE